# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Maria Ellison, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| COUNTY OF LINCOLN, MISSOURI, ) | |
| ) | |
| Prepare Summons, serve at: ) | |
| Ms. Crystal M. Hall ) | |
| Lincoln County Clerk ) | |
| 201 Main Street ) | |
| Troy, MO 63379 ) | |
| ) | **JURY TRIAL DEMANDED** |
| and ) | |
| ) | |
| John Cottle, individually ) | |
| Prepare Summons, serve at: ) | |
| 65 Business Park Drive Troy, Mo 63379 ) | |
| (or wherever Defendant may be found ) | |
| within the State of Missouri) ) | |
| ) | |
| and ) | |
| ) | |
| David Curtis, individually ) | |
| Prepare Summons, serve at: ) | |
| [407 Vermont St., Bethalto, Il 62010] | |
| or wherever Defendant may be found ) | |
| within the State of Missouri or Illinois) ) | |
| ) | |
| and ) | |
| ) | |
| Lincoln County Sheriff's Department ) | |
| Prepare Summons, serve at: ) | |
| John Cottle ) | |
| 65 Business Park Drive Troy, Mo 63379 ) | |
| ) | |
| Defendants. ) | |

# COMPLAINT

COMES NOW Plaintiff, Maria Ellison ("Plaintiff'), by and through her undersigned counsel, and for her Petition against Defendants, states and alleges as follows:

1. Plaintiff brings this action because while employed by Defendants she has been subjected to the unlawful employment practice of sex discrimination and harassment in violation of her rights to equal protection under the Fourteenth Amendment to the United States Constitution.

2. Jurisdiction is conferred upon this United States District Court by 28 U.S.C. §§ 1331, 1343. Jurisdiction may also be appropriate under 42 U.S. C. §§ 1981, 1983, and 1985(3).

3.   At all times material to this action, Defendants acted by and through certain of their elected or appointed officials, managers, officers, employees, servants and/or agents and each of them were at all such times acting within the scope and course of their agency and employment and/or their actions were expressly authorized by Defendants and/or their actions were ratified by said Defendants.

4. At all times material to this action, Defendants were acting under color of State law.

5. At all times material to this action, Plaintiff was employed by the Lincoln County Sheriff's Department where Defendant Cottle served as the elected Sheriff of Lincoln County and was, as such, the chief executive officer of the Lincoln County Sheriff's Department.

6. At all times material to this action, Defendant Curtis was employed by the other Defendants as the Captain, or officer in charge, of the Lincoln County jail.

7. At all times material to this action, Defendant Curtis had supervisorial authority over Plaintiff in the Department.

8. Upon information and belief, all acts and conduct which are the subject of this lawsuit occurred in Lincoln County, Missouri.

9. While employed by Defendants during Defendant Cottle's tenure as Sheriff, Plaintiff was subjected to discrimination with respect to the compensation, terms, conditions, and privileges of employment based upon her gender.

11. Defendant Curtis continuously referred to women as vile and offensive names, made disparaging remarks about women in general, women in law enforcement and individual women (both co-workers and non-coworkers), all of which was based on gender.

12. Defendant Curtis displayed a recurring pattern of behavior whereby a female subordinate employee would come into his disfavor for a trivial reason or no apparent reason at all. Defendant Curtis would then single out such female employees out for cruel, mean, and unfair treatment with the intent of forcing the employee to resign.

13. Defendant Curtis' conduct became progressively so severe, extreme, and pervasive that it made Plaintiff's work environment intolerably hostile and abusive to such an extent that Plaintiff was uncomfortable coming to the Sheriff's Department office for fear of coming into contact with Curtis.

14. The unlawful sex discrimination took place on a continuing basis during the time Plaintiff was employed under Defendant Cottle's tenure as Lincoln County Sheriff.

15. During Defendant Cottle's tenure as Sheriff, Plaintiff was treated differently than similarly situated male employees with respect to her compensation, and the terms, conditions, and privileges of employment due to her gender.

16. On or about October 4, 2013, Plaintiff reported Defendant Curtis' behavior and its creation of a hostile work environment to Defendant Cottle.

17. After that complaint was made, the inappropriate conduct and unequal treatment previously described intensified.

18. On or about November 7, 2013 Plaintiff again complained to her superiors about Defendant Curtis' ongoing outrageous and discriminatory behavior.

19. After her second complaint was ignored and again resulted in an escalation of Defendant Curtis' harassing and inappropriate behavior, Plaintiff was constructively discharged on November 12, 2013.

20. After Plaintiff's complaints were rebuffed by the Sherriff and Plaintiff was subjected to worse treatment and constructive termination, Defendant Curtis would frequently brag that "That is what happens when you go against with me."

21. As women were terminated, either actually or constructively, Defendant Curtis would celebrate their termination and would hang the badges of the female officer's he had "gotten rid of" on a wall in his office, which he openly referred to as his "trophy wall" or "the wall of shame."

22. Defendant Curtis would openly brag about getting rid of the female officers who were terminated or constructively discharged and openly espoused the view that women did not belong in law enforcement.

23. Defendant Cottle took office on January 1, 2013 and immediately hired Defendant Curtis to be captain of the jail.

24. Defendant Curtis had no experience in corrections or in running a jail. His only qualifications appear to have been that he had experience as a police officer and was a personal friend of the new Sherriff.

25. In so hiring Defendant Curtis, Defendant Cottle demoted or otherwise removed from command Plaintiff, who had held that position for many years.

26. In addition to removing Plaintiff from command of the jail in favor of Defendant Curtis, Defendant Curtis was given a higher salary than Plaintiff had received to perform the same duties.

27. In addition to removing Plaintiff from command of the jail and paying Defendant Curtis more money, Plaintiff was expected to train Defendant Curtis how to perform her former job because he had no experience in corrections or running a jail.

28. Defendant was hired to replace Plaintiff as commander of the Lincoln County Jail despite the fact that he had a criminal record for violating citizens' civil rights while a police officer.

29. Within one month of taking office, Defendant Cottle had one of his female employees arrested and charged with felony theft for allegedly embezzling over $25,000 following a one-day investigation into the matter by male investigators under his command, none of whom had any particularized knowledge or training in forensic accounting.

30. Defendant Curtis then ordered that the female arrestee be placed in "general population" with other inmates rather than in a more protective location as would be common practice at the jail when a law enforcement officer is confined in the jail because law enforcement officers are likely to be the targets of violence from other inmates.

31. The charges against that female employee have subsequently been dismissed.

32. The highly publicized arrest and charging with a felony of a long-time female employee of the jail based on scant or no evidence of actual criminal activity and after only a one day investigation by the male officers under Sheriff Cottle's command created an environment of fear among the female employees regarding not only their continued employment, but their very freedom should they choose complain about the treatment they were being subjected to.

33. As complaints regarding Defendant Curtis began to mount, Defendant Cottle called a meeting, ostensibly to discuss the issues complained of.

34. Defendant Cottle began the meeting by intentionally highlighting his close friendship with Defendant Curtis by tossing Defendant Curtis a pack of cigarettes and informing the group that Curtis had left the cigarettes at his (Defendant Cottle's) house the night before.

35. Rather than discussing the issues complained of, the meeting consisted of little more than Defendants Cottle and Curtis informing those present that Defendant Curtis was staying, would not change, and they would have to get used to it or quit.

36. Defendant Curtis's conduct went so far as to express his "hope" that Plaintiff's house would "burn down" and "kill her and her whole family" in front of his co-workers.

37. Defendant Curtis would refer to his subordinate female employees generally as "hoes" or collectively as his "harem of hoes."

38. Defendant Curtis' conduct was so severe, shocking, extreme and pervasive that it made Plaintiff's work environment intolerably hostile and abusive to such an extent that Plaintiff felt she had no recourse other than to resign her employment.

39. The sexually hostile work environment created, encouraged and perpetuated by Defendants was long-standing "business as usual" for Defendants during Defendant Cottle's tenure, and upon information and belief, even before.

40. Indeed, discriminatory and sexually aggressive and/or suggestive conduct of supervisory personnel directed at female employees was commonly accepted, if not condoned, by Defendants in general, and Defendants Cottle and Lincoln County Sheriff's Department in particular during Cottle's time as Lincoln County's Sheriff.

## COUNT I

### 42 U.S.C. § 1983 Action; Deprivation of Plaintiff's right to Equal Protection under the Fourteen Amendment to the United States Constitution
### (against all Defendants)

41. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

42. Plaintiff was subjected to intolerable and hostile working conditions on account of Defendants' afore-mentioned behavior, including disparate treatment when compared with male co-workers.

43. Plaintiff was discharged on or about November 12, 2013.

44. Plaintiff's gender was a motivating factor and a determining factor in the disparate and hostile treatment of Plaintiff that culminated in her discharge.

45. At all times relevant to this action, Defendants were acting under color of state law.

46. At all times relevant to this action, Defendants Curtis and Cottle were acting within the course and scope of their employment.

47. The behavior that resulted in the disparate treatment and discharge of Plaintiff was pervasive and constituted "business as usual" in the Lincoln County Sheriff's Department and the jail division in particular.

48. Defendants were aware of or should have been aware of the behavior that resulted in the disparate treatment and discharge of Plaintiff.

49. Defendants Lincoln County, Lincoln County Sheriff's Department, and Cottle failed to adequately train Sheriff Cottle and/or the supervisory personnel of the Lincoln County Sheriff's Department in order to prevent the disparate treatment and/or harassment of women in the employ of the Sheriff's Department.

50. Defendants Lincoln County, Cottle, and Lincoln County Sheriff's Department had actual knowledge of sexual discrimination and harassment against women having occurred in the Lincoln County Sheriff's Department under the previous Sheriff's tenure.

51. Under such circumstances, Defendants Lincoln County, Cottle, and Lincoln County Sheriff's Department's failure to adequately train Sheriff Cottle and his supervisory personnel amounted to a deliberate indifference and a reckless disregard for the rights of Plaintiff.

52. The Defendants' unconstitutional conduct as described in this complaint was so pervasive and widespread as to have force of law or policy of the County.

53. The policy makers for Defendants Lincoln County and Lincoln County Sheriff's Department were actually or constructively aware of the unlawful conduct and that it was so widespread as to constitute an informal policy of said Defendants.

54. The policy makers for Defendants Lincoln County and Lincoln County Sheriff's Department failed through specific intent or deliberate indifference to stop the practice/informal policy of disparate treatment and harassment.

55. Such informal policy/practice of disparate treatment and harassment of female employees of the Sheriff's Department proximately resulted in the unconstitutional practices that violated Plaintiff's Constitutional right to equal protection.

56. As a direct result of Defendants' deprivation of Plaintiff's constitutionally protected right to Equal Protection, Plaintiff has suffered damages and is reasonably likely to continue to suffer and sustain damages including emotional distress, stress, anxiety, loss of professional status among her peers, lost promotional and career advancement opportunities, lost wages and benefits, humiliation and embarrassment. Plaintiff is thereby entitled to general and compensatory damages, the exact amount to be determined by the Jury.

57. The actions and conduct of Defendants as set forth herein were outrageous because of Defendants' (and their agents') evil motive or reckless indifference to the rights of others, and as such warrant a separate award of punitive damages against each Defendant in an amount the Jury deems sufficient to punish Lincoln County, the Lincoln County Sheriff's Department, Sheriff Cottle and David Curtis for their unlawful conduct and to deter said Defendants and others from like conduct.

58. In addition to all other relief sought herein, Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgment against Defendants, awarding Plaintiff: (i) general and compensatory damages in such sum as the Jury believes fair and reasonable; (ii) punitive damages in an amount the Jury believes sufficient to punish each Defendant for its or his unlawful conduct and to deter each Defendant and others from like conduct; (iii) attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and (iv) such other and further relief as the Court deems just and proper under the circumstances in order to give effect to the remedial purposes of 42 U.S.C § 1983.

JAMES LAW GROUP, LLC

BY: _____/s/ John D. James_____
John D. James #61070MO
14 Richmond Center Court
St. Peters, MO   63376
(636) 397-2411 Fax: (636) 397-2799
e-mail: cjlaw@charliejames.com